UNITED STATES DISTRICT COURT

| | |
|---|---|
| THE UNITED STATES OF AMERICA<br><br>v.<br><br>NOAH GRASSIE | 09-CR-00187-06-JL |

SENTENCING MEMORANDUM

    NOW comes the defendant, Noah Grassie, by and through counsel, and respectfully requests this Honorable Court to Court to consider his Sentencing Memorandum in determining the appropriate sentence in this case. Defense counsel further requests that this Court accept his motion although it is filed 1 day after the deadline according to local rule 32.1(i).

    In support of this Motion, Mr. Grassie states the following:

1. On May 24, 2010, Mr. Grassie changed his plea to guilty on count one of the indictment alleging Conspiracy to Possess with Intent to Distribute Oxycodone, Oxycontin, Suboxone, Lorezapan, and Ativan, in violation of 21 U.S.C. §§ 846 and 841(a)(l). Sentencing was postponed due to Mr. Grassie's admission into and participation in the LASER Court. Following Mr. Grassie's dismissal from LASER Court, this Court scheduled a sentencing hearing for May 9, 2012.

2. Under Local Rule 23.1(i), a Sentencing Memorandum was due on April 30, 2012. Counsel asks that this Court accept his filing one day late. By way of explanation, counsel had originally conceived of not filing a Sentencing Memorandum and relying on his written Objections to the PSR which were filed in a timely manner. However,

after consultation with another attorney on May 1, 2012, defense counsel decided to prepare and file this Sentencing Memorandum.

3. Mr. Grassie files this Sentencing Memorandum primarily to set forth his objections to the guideline calculations of the PSR, and also to ask that if the Court disagrees and concurs with the guideline calculations in the PSR, that the Court grant a variance to a lower guideline level.

4. First, Mr. Grassie agrees that the base offense level is 10 and there is a 2 level upward adjustment, to level 12, for a specific offense characteristic in that the object of the conspiracy was to smuggle drugs into a correctional facility. USSG §2D 1.1 (b )(3),

5. Mr. Grassie disagrees, however, that this Court should impose a 2 level upward adjustment for obstruction of justice based on his conduct in LASER Court, and the Court should make no downward adjustment for acceptance of responsibility. Mr. Grassie addresses these two issues in reverse order.

## ACCEPTANCE OF RESPONSIBILITY

6. First, Mr. Grassie objects to the position that there should be no downward adjustment for acceptance of responsibility. See PSR, paragraphs (19), (27). Mr. Grassie contends that the Congress and the United States Sentencing Commission did not intend this provision to be used to deny an adjustment based on conduct during a rehabilitative program such as the LASER program.

7. Rather, Mr. Grassie contends that should receive a 2 level downward adjustment for acceptance of responsibility, because he "clearly demonstrate[d] acceptance of responsibility for his offense." USSG 3E1.1(a). He confessed to his crime to law enforcement officers, pled guilty to the charged offense rather than bringing the case

to trial, did so in a timely manner, did not provide false information during the PSR preparation process, and undertook other action discussed in his Objection Letter which is attached to the final PSR.

8. The Commentary to USSG 3E1.1, n.3, states in part: "Entry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which he is accountable under §1B1.3 (Relevant Conduct) (see Application Note 1(A)), will constitute significant evidence of acceptance of responsibility for the purposes of subsection (a).  However, this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility."

9. Grassie contends that based on his confession, guilty plea, and other conduct demonstrating acceptance of responsibility that is described in his Objection Letter, that there is "significant evidence of acceptance of responsibility," and it is not outweighed by his conduct during LASER Court.

OBSTRUCTION OF JUSTICE

10. Second, Grassie objects to the PSR's position that he should have a 2 level upward adjustment for Obstruction of Justice.  See PSR, paragraphs (18), (25); USSG 3C1.1. Certainly, Grassie did not obstruct justice in the investigation or prosecution of this case.  This is clear because under the LASER Docket Admission Criteria, paragraph #7, a person who obstructed justice cannot be admitted to LASER Court, but Grassie was admitted to LASER Court.   Grassie contends that the Congress and the United States Sentencing Commission did not intend this provision to be used to deny an

adjustment based on conduct during a rehabilitative program such as the LASER program.  Grassie further notes that two other individuals who were terminated by the LASER Program, based on misconduct that included drug abuse, criminal conduct and/or lying, still received downward adjustments for acceptance of responsibility and apparently did not receive upward adjustments for obstruction of justice.  Mr. Grassie does not wish to draw any false analogies and acknowledges that his misconduct in LASER Court was far more prolonged or egregious than that of Terrilyn Bodge or Kasie Randall.  He draws the Court's attention to these cases only to illustrate the point that the Court's decision to withhold the acceptance of responsibility adjustment, or apply the obstruction of justice enhancement appears to have been treated as discretionary in the past, not mandatory, when it comes to LASER Court participants terminated for misconduct.

11. Further, Grassie contends that the LASER program, unique to our District, was not part of the "investigation, prosecution, or sentencing of the instant offense of conviction…." USSG 3C1.1.  An examination of the LASER Program formation documents illuminates the questions raised above, as to whether the LASER program was part of the "investigation, prosecution and sentencing" of this case, and whether the Congress and/or Sentencing Commission intended conduct during a rehabilitative program like the LASER Court to impact sentencing guideline calculations.

12. The four-page "Participant Overview" describes a number of "sanctions" that may result from violations during the LASER program, including termination from the program.  Nowhere in the Participant Overview, does it indicate that the participant's applicable guideline range may be adjusted upward, or that an adjustment for

acceptance of responsibility may be forfeited, for violations of the LASER program. The closest that this document comes to such a warning is when it states: "The United States Magistrate Judge presiding over the revocation hearing will be fully informed of your conduct, including your successes, failures, violation(s) and sanction(s) imposed during your participation in the LASER Docket program."

13. The three page Participant Agreement signed by Grassie did not warn him that violation of the rules of LASER Court could cause him to lose his downward adjustment for acceptance of responsibility, or to incur an upward adjustment for obstruction of justice.  Rather, the Agreement warns him as follows: "I understand that failure to comply with the terms of this agreement or the Court's orders, may result in modification and/or termination from the LASER Docket program and/or revocation of pre-trial release." (Page 1)  A similar warning appears on the next page: "I understand that if I violate any of the terms or conditions of my programming, supervision and treatment, or if I fail to appear for any LASER Docket review hearing, then sanction(s) may be imposed upon me, up to and including termination from the program." (Page 2)

14. None of these documents suggest that the intention of the Court and other individuals who helped design and create the LASER Court, was to establish an opportunity for LASER participants to substantially increase their applicable guideline range and resulting sentencing exposure.  If any such consequences had been more explicit, than Grassie and his attorney could have had a fully-informed discussion about the true risks of LASER Court, and whether those risks were worth the potential upside.  That upside, in terms of sentencing impact alone, was minimal when one considers that

Grassie faced a 15-21 month guideline range, had a significant amount of pretrial credit, and would be sentenced in a conspiracy where most of the co-defendants received sentences substantially below the applicable guideline range.

15. Grassie is not contending that the lack of such warnings means that this Court lacks the power to impose the adverse adjustments recommended by the United States Probation Office. Rather, Grassie is contending that the lack of such warnings evidences that the LASER program is a unique, unprecedented rehabilitative program; that the "rules" and very nature of LASER make it stand apart from the traditional investigation, prosecution and sentencing process; and that accordingly the Court should exercise its discretion not to impose such guideline adjustments based on Grassie's failures.

<u>ALTERNATIVE POSITION – OFFSETTING ADJUSTMENTS</u>

16. Finally, in the alternative, Grassie contends that there should be offsetting adjustments under USSG 3E1.1 and 3C1.1, pursuant to USSG 3E1.1, n.4. That note indicates that "[c]onduct resulting in an enhancement under §3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§3C1.1 and 3E1.1 may apply."

17. Grassie contends that what makes this case extraordinary is that the LASER Court itself is extraordinary, it is an experiment without precedent in the federal system, it is intended to be rehabilitative in nature, and accordingly Grassie's voluntary use of that program should not put him in a much worse position than if he had never enrolled in the program. According to paragraph (5) of the PSR, the vast majority of the co-

defendants in this conspiracy, even the co-defendant who went to trial and was found guilty by jury, received very substantial downward variances from their guideline sentencing ranges. Grassie seeks no such downward variance from the guideline range that would have applied had he never enrolled in LASER Court, but takes the position that his guideline range should not substantially increase due to his conduct in LASER Court.

## DEFENDANT'S SENTENCING RECOMMENDATION

18. If this Court agrees with Mr. Grassie's position that the obstruction of justice enhancement should not be applied, AND that he should receive credit for acceptance of responsibility, then his total offense level is 10 and his criminal history category is IV, for a guideline range of 15-21 months. If this Court agrees with only one of Mr. Grassie's arguments, or if this Court agrees that offsetting adjustments should be made, then his total offense level is 12 and his criminal history category is IV, for a guideline range of 18-24 months. Based on these possibilities, Mr. Grassie respectfully submits that he should be sentenced to 18 months imprisonment.

## REQUEST FOR A VARIANCE

19. Because the sentencing guidelines are advisory in nature, *U.S. v. Booker*, 543 U.S. 220, 126 S. Ct. 738 (2005), this Court must carefully consider all of the factors listed in 18 U.S.C. § 3553(a) when exercising its sentencing discretion. *Gall v. U.S.,* 128 S.Ct. 586, 596-97 (2007); *Booker*, 543 U.S. at 262.

20. 5. Section 3553(a) directs sentencing courts to consider a number of factors, inter alia:

    (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed—(A) to reflect the

seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

21. The sentencing court's ultimate responsibility is to impose a sentence that is "sufficient, but not greater than necessary," to achieve the purposes which underlying the sentencing statute. 18 U.S.C. § 3553(a). Mr. Grassie's offense conduct consists of a single act of delivery of contraband to the jail, consisting of tobacco and pills. This is Mr. Grassie's crime. Mr. Grassie failed to avail himself of a valuable opportunity for rehabilitation and personal growth during the LASER program, instead disgracing himself during the final months of that program. It appears from the fate of other co-defendants that if Mr. Grassie had never participated in LASER, he would have received at most 15 months in prison, perhaps less, perhaps even time served. Based on all of the circumstances of this case, a sentence of 18 months is sufficient, but not greater than necessary to achieve the purposes of the federal criminal justice system. Thus, if this Court disagrees with Mr. Grassie's guideline arguments and determines that the applicable guideline range is 27-33 months as indicated in the PSR, then this Court should grant a downward variance to a lower sentence because 27-33 months is excessive for Mr. Grassie's offense, considering all relevant circumstances.

WHEREFORE, Mr. Grassie respectfully requests that this Honorable Court:

(a) Consider his Sentencing Memorandum;

(b) Impose a sentence of 18 months;

(c) Grant such other relief as the Court deems just.

                Respectfully submitted,

                */s Theodore Lothstein*
                Theodore Lothstein
                N.H. Bar No. 10562
                Lothstein Law Office, PLLC
                58 Pleasant Street
                Concord, NH 03301
                603-513-1919

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion has been forwarded by electronic mail on May 1, 2012 to Jennifer Davis, Esq., United States Attorney's Office, and to Cathy Battistelli, United States Probation Office.

                */s Theodore Lothstein*
                Theodore Lothstein